Good morning, your honors, Gene Reese, USC Immigration Clinic Pro Bono Counsel for Mr. Shoe. If removed to Nigeria, Mr. Shoe will be tortured as a gay man, and the agency's infirm adverse credibility determination unlawfully deprives Mr. Shoe of protection under the Convention Against Torture. The adverse credibility determination is fatally flawed and not supported by substantial evidence. In this case, the agency cherry-picked grounds and mischaracterized evidence and also speculated in order to determine that Mr. Shoe was not credible, and specifically that Mr. Shoe was not gay. And the bulk of the adverse credibility finding is predicated on the immigration judge's speculation that Mr. Shoe would not be in a relationship with a woman if he was gay. And this implausibility finding by the immigration judge is not supported by record evidence and is based on speculation. Mr. Shoe testified to being in a relationship with Ms. Collins because he was seeking housing and needed support. This is consistent with the previous testimony of Mr. Shoe and the subsequent testimony of Mr. Shoe regarding being in a relationship with a woman in Nigeria, his wife, which was similarly for security. The documentary evidence shows that 40% of men in Nigeria are in relationships with women but also have sex with men. And Mr. Shoe testified that Ms. Collins and him brought men into their relationship, their sexual relationship. Mr. Reese. So the government isn't defending that part of the IJ's reasoning. So if we agree with you and apparently with the government that that, what the IJ said about that is not supportable, then the question is why isn't the rest of the, or the other grounds, why aren't they sufficient to uphold the adverse credibility finding? Because in considering the totality of the circumstances, whether or not Mr. Shoe is credible as to his homosexuality is the bulk of the adverse credibility determination. And it's significant that the government doesn't defend the implausibility. A second ground stated by the IJ is the inconsistency between Mr. Shoe's declaration and testimony where Mr. Shoe testified about relationships with men but only mentioned relationships with women in the declaration. The government also does not defend this. But that's based on this speculation that Mr. Shoe is not credible as to being gay. And from that flows this lack of cooperation ground that Mr. Shoe failed to meet the burden to show that he's eligible for relief as a gay man. It all flows from this kind of infirm finding. Let me ask you about the due process claims. One of them is that the immigration judge admitted or essentially took at face value the State Department's investigation that certain documents were fraudulent, the police diary and this wanted poster, without Mr. Shoe being able to cross-examine the investigator. And then the other one was about admitting into evidence Ms. Collins' email and statement. Why would those things be prejudicial if they did result in error, in due process error? Because the board and the immigration judge found an adverse credibility inconsistency based on inconsistency between that email from Ms. Collins and also found that Mr. Shoe had committed fraudulent conduct in providing those documents that were determined to not be authentic. And so had that been error, prejudice is demonstrated that could have affected the outcome because that affected, those were part of the grounds for the adverse credibility. Is it just about an adverse credibility finding or if I pull back the lens, do those documents, the wanted poster, the police diary, could they be independent evidence that he might be tortured if returned as well? That was not considered by the agency? Yes, that's correct, Your Honor. And that could have provided information on its own that he faced this more likely than not torture. And I would point out too, while there is this separate due process that on its own would have potentially affected the outcome of the CAT denial, it's also a factor to consider in the adverse credibility determination. And I think the IJ here and the board in affirming the IJ kind of sever the proceedings to be kind of limited and focused to the conviction and conduct relating Ms. Collins, where there is a previous record, a previous consistent testimony. Mr. Shoe agreed to a year continuance back in 2000, I think it was around 2008, 2009, for the State Department to conduct this investigation into the documents. And he was questioned about those documents and how they were obtained in that previous 2008 hearing. Now, later, this is being used when he testifies consistently the same way that he had obtained those documents, and the board here uses that to find that he engaged in fraudulent conduct, which is not established by the record and is also a due process. What about the IJ's finding of an inconsistency between his statements about what occurred with the kidnapping of Ms. Collins and what his plea agreement showed? Even if we were to agree with you that other things might raise questions about how those credibility determinations were made, wouldn't that alone be enough to sustain an adverse credibility finding? Not under the totality of the circumstances. There is this unreliable e-mail from Ms. Collins that's incomplete, and it is a basis for the agency to find Mr. Shoe not credible. There is no inconsistency. Mr. Shoe's explanation is not acceptable to the agency as to the motivation for his conduct. It's not inconsistent with his plea. But the plea, I thought the plea said, I mean, his explanation before the agency was that he kidnapped her in order to try to calm her down, right? And the plea agreement said that he, you know, grabbed her, you know, dragged her through rosebush, causing, you know, all sorts of abrasions. And he pleaded that he did it with the specific intent to place her in fear for her life, which seems not consistent with calming someone down, right? I think he's responding to questions regarding his mental state. Even if your honors disagree and think that that is an inconsistency, that one inconsistency in light of the totality of the record cannot support an adverse credibility determination. In addition to the unreliable e-mail from Ms. Collins, the agency said that they would admit it but give it limited weight, and yet it forms the basis of one of the grounds of the adverse credibility determination. Well, the agency, the IJ had a one line in its decision about Ms. Collins' e-mail, if I remember correctly. But I guess my question was, you know, part of her e-mail or statement was the assertion that he was not homosexual. And I take it your view is that that view maybe permeated or the IJ accepted that assertion and that conception permeated the IJ's decision itself? Yes, because that e-mail, if we look at the totality of the circumstances of the record, Mr. Sho was convicted and given a low term of three years. He was not convicted or pled to everything that Ms. Collins alleges in her e-mail statement. Mr. Sho testified previously that Ms. Sho would threaten him with calling ICE and saying he wasn't gay. So this document is fundamentally unfair to rely on. And even though there is a one sentence statement by the judge, it was relied on in the decision to find him not credible. And I know the government says we're making this kind of pre-Real ID, heart of the claim act. We're not. We're making a totality of the circumstances. And given the history of the record and the totality of the record, where Mr. Sho testifies consistently about his relationship with men in Nigeria, what happened in Nigeria, to the credible fear interview, to the previous proceedings, to the immigration officials in the I-213, all of that is being disregarded and ignored. And the immigration judge just kind of cherry picks Ms. Collins' e-mail statement. And even if Your Honors find that the plea is inconsistent with his explanation, that ignores this big issue of is he gay or not, because that goes to whether or not he's entitled to relief. Can I ask you to go back to the question of the State Department report of the investigation of the Nigerian police documents? I gather it's not uncommon for DHS to introduce reports like this of some investigation to some circumstance in a foreign country. Is it your view that they always have to produce a person to testify about that? Is it ever consistent with the due process clause to rely on a written report from the State Department about what they found? Well, in the case law, it has been found to be a due process violation if that person is not produced, if they're available to testify about that investigation. And so I wouldn't say today I'm making an argument that there's this bright-line rule that it always has to be produced. I think, again, the standard is this fundamental fairness. In this case, the reports were being used to find him not credible. They were present and he was questioned about it and he was found credible in the previous proceedings. And under those circumstances, also given the explanation that he received these documents and he testified consistently that he received them and provided them to the court and he was aware there was going to be an investigation and he gave the government a year to conduct that investigation that he should have been able to cross-examine. The conclusion of the report were that these documents were not authentic and he testified to how he obtained them. I think it's too big of a leap to say that he falsified the documents or he knew that they were false when he provided them and that's a basis for an adverse credibility determination and also an independent basis to find that he wouldn't likely be tortured. So I guess in Gregorian, which seems like it's the best case for you on this point, it seemed like it was important to the court there that we didn't really know anything about who the investigator was or what sort of investigation that person had done. And here we don't have a name, but we did get some general information about the investigator and we got a very detailed description of what they did to do the investigation. So why isn't that enough to make this different from Gregorian? It's not. Well, regarding the due process... On the due process question. It's not sufficient because this is something that is just kind of being blindly accepted by the agency. Years after it was already determined that he was credible in light of these documents and if this now is coming back to be a basis, Mr. Cho was entitled to be able to cross-examine. Were these documents in the original asylum proceedings that the government did not contest? They were... I'd have to check the record to see if they were admitted, but there was extensive questioning about it, and government counsel on cross-examination asked Mr. Cho, what if I told you they were not authentic? Would that surprise you? And went through each document and said, what if I told you they were found not to be authentic? Would that surprise you? In this hearing you're saying? In the previous 2000 hearing. In the first hearing. Yeah, the first hearing. Okay. And I can provide... We have a little less than two minutes. Do you want to reserve? Please, thank you. Thank you. We'll hear from the government. Good morning. May it please the court, my name is Kristen Whitaker, and I'm here on behalf of the Attorney General of the United States of America. This court should deny the petition for review. First, substantial evidence supports the agency's adverse credibility determination. Where Cho testified inconsistently with documentary evidence, he presented implausible claims in regards to evidence that he submitted in support of his application, as well as his alleged persecutors. He engaged in multiple instances of fraudulent conduct, and he failed to rehabilitate his noncredible testimony with sufficient cooperation. Second, the court should deny the petition for review, insofar that Cho contends that he was denied due process by the evidence of evidence, namely Colin's statement and documentation from the State Department. Cho was provided a full and fair hearing. He received advanced notice of the documents and was given multiple opportunities to address the evidence and rebut any claims. And the immigration judge thoroughly considered Cho's objections, recognized that the evidence may be used as impeachment of an impeachment value, scrutinized the weight of the evidence in light of its sources, and did not rely on the evidence solely for any of the findings. Ms. Whitaker, can I ask, so how do you line up this case with Gregorian? Was the government required to provide, or at least to try to make available, the investigator of the author of the report from the State Department? So it is distinguishable from Gregorian. This court has held that it could be a due process violation if the government doesn't make reasonable efforts to obtain a witness. However, it looks at cases on a case-by-case basis. In Gregorian, they found that it was a due process violation because there are multiple issues with that case. There was improper burden shifting on the petitioner. It was a one-page document report of investigation that was the sole basis for denying the applicant relief. And it was not persuaded by the government's arguments in regards to Ingoff. It pointed out that Ingoff dealt specifically with statutory process. And it also noted that Ingoff, he had the burden there, and that it was an adverse credibility determination, and they were using it as impeachment. And so here we have a situation where the evidence was not the sole basis for any of the findings, let alone the adverse credibility determination. And I know that was a concern also in Ingoff with the dissent. The court expressed concern that hearsay would be the sole reason for denying an applicant who was otherwise qualified for relief or protection from removal. Let me ask, why does... I don't understand the relevance of whether it's the sole reason or not. I mean, that seems relevant to whether its admission, if erroneous, was prejudicial. But why does the question whether its admission is consistent with due process depend on what other evidence there is? Because it goes to the weight, not admissibility. Because it wasn't relied solely upon for any basis, it wasn't deprived of due process. And again, the petitioner was provided with multiple opportunities to address the evidence and to rebut any claims. I'm sorry to interrupt. Let me follow up on that particular point. Because at least as I understand this investigation, it names this unnamed police commissioner and another unnamed officer at this police station. And these people purportedly say that this is not the right format for the wanted poster. But as I understand it, there's no exemplar of what the right wanted poster actually looks like. How was Mr. Shoe able to adequately challenge the reliability of this investigation if you don't have the investigator, you don't have the names of the people who this investigator purportedly contacted, you don't have the exemplars of what the right sort of exhibits are supposed to look like? How is he getting a due process right to challenge those allegations? I think what is of importance in this case is that he was given the opportunity to testify about how he obtained the documents. He may not know the exemplars that were used in comparison, but he is able to tell the immigration judge how he obtained it. And notably, his account of that evidence was already at question. He presented an implausible claim as to how he obtained it  And I also want to note, and I recognize this wasn't discussed in the agency's decision. Isn't that the same argument that he's making? You're saying he couldn't confirm how he got the evidence and you can't confirm how you got yours. He submitted evidence in support of his application, and he presented an implausible claim that he got it from a friend. I also want to note for the court, because the petitioner has come and said that she'll testify consistently, repeatedly testify consistently about his claim. However, in the former proceedings, he presented a different account as to how he acquired the evidence. He indicated that it may have been in his mother's home, that the police may have given it to his mother, or his cousin acquired the documents. But at no point did he say that his cousin was beaten and detained. And so in these proceedings, there were open proceedings in which he's confronted with the documents and confronts it about the authenticity. Then he seems to enhance his claim of persecution. One thing, Ms. Spitakor, that I would say is, and I raise this with opposing counsel, it seems to me this goes beyond just the question of adverse credibility findings because if the agency did not look at this independent evidence of potential likelihood of torture in the future based on being targeted as a homosexual, this goes to his cat claim. This goes beyond just whether he might be a credible person or not, doesn't it? I understand the court's concerns, but I would like to bring the court's attention to the fact that the evidence itself, the veracity of that evidence, was already challenged. Again, because the petitioner presented an implausible claim as to how he obtained the documents, could not explain how he submitted the documents to the court, that in itself already challenges that documentation and then calls into question whether it is independently objective and not already sullied by the adverse credibility determination. One of the things that puzzles me about this case is the fact that he had an initial hearing, was found credible, and the government conceded asylum. Now, I understand why the government would move to terminate that based on his criminal conviction, but why isn't the prior proceeding significant in terms of the finding that he was credible and that he was entitled to asylum on the merits? I mean, it's a little bit odd for the agency to reverse itself, essentially, on a second hearing and say, no, you were never credible in the first instance, and we shouldn't have granted you asylum way back when. Again, I understand why the government would move to terminate because of his conviction in the United States, but it just puzzles me that now the government is adamantly saying this guy is not credible when it conceded he was credible and entitled to asylum in the first instance. Well, the government didn't oppose the grant of asylum, and it's not clear to me why the government didn't do so in that regard. But we have to remember that the petitioner is presenting his claims for cap deferral, and in order to present those claims, the immigration judge warned him that he would have to go into his past harm and then that credibility would always be at issue. So, DHS, at this point, then has the opportunity to raise this evidence to show that the petitioner is not credible and, therefore, has failed to meet his burden of proof. But it seems to me, to Judge Thomas's point, at least at one point, the government seems to have conceded that he was homosexual and deserving of asylum relief on that basis. But what do you make of counsel's point that the IJ's belief that he was not homosexual, which I credit the government for not defending that, permeated the hearing itself and might have been the basis for the IJ to determine that he would not be targeted if returned to Nigeria? I can't speculate as to that, and I think that it did not permeate the decision where you look to the basis provided by the immigration judge. The immigration judge provided specific and cogent reasons that were not related whatsoever in regards to the petitioner's sexual orientation. We have significant evidence of falsehoods, fraudulent conduct, lying before another court or the immigration judge. And all of that is in black and white. That is not affected by the inconsistency or implausibility finding in regards to the sexual orientation. And, Your Honor, I recognize that by not defending that, the petitioner argues that the adverse credibility determination should be overturned. However, I want to point the court's attention to Kumar v. Garland. And in that case, even if there were issues in which the court did not agree with the adverse credibility, you look to the totality of the circumstances and give usually greater weight to evidence, again, of fabrications and falsehoods. And that's what we have in this circumstance. Then turning to the due process, like the government asserted in its brief, again, we contend that he was provided with sufficient process because he was provided with advance notice, multiple opportunities to rebut the claims and address the evidence. And the immigration judge did not rely on the evidence solely for any of the findings. Think about Collin's statement. Even if we completely disregard that it existed, there is evidence that Sho was inconsistent with his own plea agreement. I know the petitioner asserts that his state of mind wasn't inconsistent, but as Your Honor pointed out, it doesn't make sense, common sense, that he was merely trying to calm Collin's down when he himself admitted that he threatened her with death and he did so to make her afraid. And then for the State Department documents, again, that evidence is already at question. He presents an implausible claim. He could not explain how that evidence was obtained. His testimony was not consistent with his former proceedings as to the evidence. And then I'm trying to think of the other reasons. Can I just ask you to, I mean, Judge Sanchez asked you this already, but I just want to be clear on what your answer is to what it is that makes this different from Gregorian as far as the State Department report. Because in Gregorian, right after we said why the admission of the document was fundamentally unfair, we said it did not provide sufficient information about the fraud investigation and the Gregorians were not afforded a meaningful opportunity to rebut its allegations. So why are those two things not equally present here? Well, I do think that these documents actually go into the investigation and talk about the methods that they undertook. And ANGOF does discuss how these documents are appropriate for an agency to review and the addition of reliability and presumption of regularity. But again, the distinguishing factors from Gregorian is that this wasn't the sole basis for denying the petitioner's application. And it wasn't the sole basis for any of the findings of the immigration judge. This was just basically cumulative. The contested evidence was cumulative of evidence that was already before the immigration judge in regards to Collins' statement. And isn't that, I mean, maybe we're just, I think I asked this already, but isn't that just an argument that it wasn't prejudicial? I mean, there's no, if the admission of the evidence, if the evidence is unreliable and there's no meaningful opportunity to rebut it, why is it not a due process violation to admit it just because there's some other evidence that says the same thing? I think if the court has to look at other cases like, is it Sinopean? Again, the court evaluates each case on a case-by-case basis. And in that case, they concluded that there was a due process violation because the petitioner was not provided advance notice of the document and was not provided with the ability to confront the witness. Here we have advance notice. We have sufficient process where the petitioner was given multiple opportunities to address the evidence and to rebut the claims and failed to do so. This doesn't go necessarily to prejudice. This shows that the immigration judge did not err in admitting the documents because of all the process that was due and the fact that the immigration judge did not rely solely on the documents in consideration of the light of the sources of the documents for any findings, again, let alone the sole finding or basis for denying the petitioner's application for, you know, cat deferral. So, again, because of the adverse credibility determination that's supported by substantial evidence, we have multiple instances of fraudulent conduct. He used fraudulent documents to enter the country, and I recognize the court has case law in which they don't like that as a sole finding. We don't view that in a vacuum, and rather we're viewing it in regards to propensity of dishonesty. So he used fraudulent documents to enter the country. He admitted to giving false information to a police officer and being in possession of fraudulent documents in his car, and then the evidence, the State Department documents, showing the evidence that he submitted in support of his application was likely fraudulent. But, again, looking to the petitioner's own testimony and his implausible claims regarding that evidence and his inability to explain how that evidence was obtained. And then his inability or excuse me, his failure to rehabilitate his non-credible testimony with sufficient corroboration. The petitioner provided no evidence corroborating his claim regarding his sexual orientation. And that goes to the CAC claim. There's no evidence, no credible independent evidence that we have before the court or the agency that established that he was in fact gay. I know that the court in, I believe it was Udo V. Garland, faulted the agency. This is a real question as to whether he's perceived as being gay as opposed to actually being gay. Because he testified that, you know, he had the arrest and so forth in Nigeria. I mean, just the fact that he might be bisexual doesn't mean he wouldn't be perceived as gay under Nigerian law, does it? See, the problem is then we're relying on his non-credible testimony. We're relying on his non-credible claims that he's asserting that he is gay. And in Udo V. Garland, there was an adverse credibility determination there, but the court said that the agency was flawed in its analysis because there was a multitude of independently dispositive evidence that established that at least the petitioner was or may have been perceived as gay. Here we have no evidence establishing that. We have no evidence— Well, just to clarify, I mean in Udo it was more than just that someone was gay. It's that there was a Nigerian policy to target that individual, which brings me back to why the relevance of these documents takes on a different significance. Because if you have a wanted poster that expressly relates to his homosexuality and a police diary that he was targeted that way, this case, if that should have been part of the record for the agency to consider, this lines up with Udo, where the agency failed to consider independent corroborating evidence of a likelihood that he might be targeted for being homosexual or even perceived as such. Here the distinguishing factor is that unlike Udo, that evidence was already challenged. That evidence itself was challenged because of the own petitioner's testimony and his failure to explain how—or his implausible claims in regards to that evidence, how he obtained that evidence, and then his ultimate concession that he did not know how his friend received the evidence. And again, let's not forget that his account regarding the evidence changed from the former proceedings and he appears to have enhanced his claim where he talks about his friend being beaten and detained and then still managing to somehow obtain the documents after the fact, even though the police officers allegedly are still upset with About Show and they want to know where he's located. So it cannot be considered independently objective evidence if the veracity of the documents has already been challenged. And I see that my time has expired, so I ask the court to deny the petition for review. Thank you, Counsel. Do I hear a rebuttal? I think the time didn't start initially, and so Government's Counsel had several additional minutes. Yeah. Your Honors, just three points. I think maybe the strongest argument that the documents related to the arrest warrant is not reliable is the Government's own position in the early 2009 proceedings. The Government didn't rely on the report to find him not credible or to find that he wouldn't be tortured or persecuted. And so the Government's not relying on this investigation in the previous proceedings to agree to asylum and waive appeal on asylum. Now the Government is saying that this is reliable and that there is no evidence that he's going to be tortured, and I think that that is inconsistent. And also that this investigation does not establish, as the Government says,  that there's evidence of fabrication and falsehoods. There is evidence that what was submitted was not authenticated by a police officer in Nigeria who's being questioned about an arrest warrant for a gay man by a U.S. state official. Second point is Government seems to argue that there's some sort of claim enhancement regarding explanation for the document, and that is just nothing that is mentioned or relied upon by the agency. And then my final point is the Government states that there's no direct evidence that Mr. Sho is gay, and that is not true, and is also inconsistent with the Government not defending any of the grounds that the IJ found to find it not plausible that he's gay. So it's inconsistent. Comarviga, Ireland, actually supports our argument. There the court did find that there was other grounds that supported the adverse credibility, including demeanor, which is a highly deferential ground, and it still struck down the adverse credibility determination because of the totality of the circumstances, that it wasn't sufficient here. And then I will just finally say in this kind of post-alum world, the case where there were some grounds not supported, some adverse credibility grounds not supported, and some adverse credibility grounds that were supported, the adverse credibility determination was upheld when the non-citizen admitted to, and this is Lee v. Garland, the non-citizen admitted to falsifying information in the asylum application and to an immigration official. And there is no evidence in this record that would support an adverse credibility determination. Thank you, counsel. Thank you both for your arguments today, and thank you for your pro bono representation. The case just argued will be submitted for decision.
judges: THOMAS, MILLER, SANCHEZ